# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY T. MARSHALL,<br><br>　　　　　　　　Plaintiff,<br>vs.<br><br>SGT. RAIN; MS. PETERSON, RN; MR. WILLIAMS, MTA; DONOVAN CORRECTIONAL FACILITY MEDICAL STAFF, et al.; LIEUTENANT COBB; John and Jane Does 1-10,<br><br>　　　　　　　　Defendants. | Case No. 04cv0403-L (WMc)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

## I.
## INTRODUCTION

Roy Marshall ("Plaintiff"), a California state prisoner at Avenal State Prison ("Avenal"), is proceeding *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 after allegedly being denied medical treatment by prison officials at Richard J. Donovan Correctional Facility ("Donovan"). Several months after Plaintiff brought this action, Defendants Peterson, Williams, and Cobb ("Defendants") sought to have the Complaint dismissed for failure to exhaust administrative remedies.[1] [Doc. No. 12.] On January 31, 2005, Magistrate Judge William McCurine, Jr. submitted a Report and Recommendation with respect to Defendants' first Motion to Dismiss. [Doc. No. 18.]

---

[1] The additional grounds in support of Defendants' Motion to Dismiss were addressed and ruled on in the June 24, 2005 Order [Doc. No. 24] of District Judge M. James Lorenz.

- 1 -　　　　　　　　　　　　　　　　　　　　　　　04cv0403

Between the time that Judge McCurine issued the January 31, 2005, Report and Recommendation and the time that District Judge M. James Lorenz issued the Order on Defendants' Motion to Dismiss, the Ninth Circuit decided *Ngo v. Woodford*, 403 F.3d 620 (9th Cir. 2005), *cert granted*, 74 U.S.L.W. 3301 (U.S. Nov. 14, 2004) (No. 05-416). Compelled by the Ninth Circuit's decision in *Ngo*, Judge Lorenz found that Plaintiff had exhausted all administrative remedies, and denied Defendants' Motion to Dismiss. [Doc. No. 24.]

On November 14, 2005, the United States Supreme Court granted certiorari in *Ngo*[2] and on March 21, 2006, Judge Lorenz granted Defendants' Motion to Stay this action pending the Supreme Court's decision. [Doc. No. 44.] The Supreme Court issued its decision in *Ngo* on June 22, 2006. On September 27, 2006, Defendants filed a second motion to dismiss based on the Supreme Court's decision in *Ngo*, which reaffirmed the "invigorated" exhaustion provision of the Prison Litigation Reform Act of 1995. [Doc. No. 52.] Plaintiff submitted a letter on December 7, 2006 regarding his inability to file an Opposition to Defendants' Motion to Dismiss by December 11, 2006. [Doc. No. 59 .]

## II.

## **PROCEDURAL BACKGROUND**

Plaintiff filed his Complaint on February 25, 2004, alleging that prison officials at Donovan ignored his need for medical treatment after he sustained injuries resulting from a fall. (Compl. at pp. 3-4.) On October 5, 2004, Defendants filed a motion to dismiss for failure to exhaust administrative remedies arguing there was no evidence that Plaintiff had filed any appeals related to medical neglect at Donovan. (Doc. No. 12, Defs. Mtn. To Dismiss at p. 3.)

On January 31, 2005, Magistrate Judge William McCurine, Jr. issued a Report and Recommendation recommending that Defendants' Motion to Dismiss be granted without prejudice for failure to exhaust administrative remedies. (Report and Recommendation re Motion to Dismiss Complaint ["R&R"], Doc. No. 18, p. 10, lns. 17-18.) Judge McCurine reported that, although Plaintiff had submitted an initial Form 602 (R&R - Doc. No. 18, at p. 6), a dismissal was warranted because Plaintiff's Form 602 was rejected as untimely and Plaintiff failed to further

---

[2]*See Woodford v. Ngo*, 126 S.Ct. 647, 74 U.S.L.W. 3301 (U.S. Nov. 14, 2005) (No. 05-416).

1 appeal that rejection, nor did Plaintiff seek relief through any collateral 602 appeals. (R&R - Doc.
2 No. 18, at p. 7.)

3 On March 24, 2005, the Ninth Circuit decided *Ngo*. In *Ngo*, a prisoner's administrative
4 appeal was rejected as untimely because he had not filed his appeal within fifteen days of the
5 alleged incident. *Ngo*, 403 F.3d at 622. The prisoner's second grievance was also rejected as
6 untimely. *Id.* Reasoning that the prisoner had no further level of appeal available in the prison's
7 internal grievance process, the Ninth Circuit found that the prisoner *had* exhausted all
8 administrative remedies available to him pursuant to the Prison Litigation Reform Act ("PLRA"),
9 and reversed the district court's dismissal of his complaint. *Id.* at 630.

10 On June 24, 2005, Judge Lorenz issued an Order denying Defendants' Motion to Dismiss.
11 (Doc. No. 24 at p. 9, lns. 8-9.) In ruling on Defendants' motion, the Court found that: (1) Plaintiff
12 filed administrative appeals concerning his medical treatment and the decision to transport him (*Id.*
13 at p. 2, lns. 27-28); (2) the appeals were returned to Plaintiff on January 9, 2003, because he had
14 not signed them (*Id.* at pp. 2-3); (3) after Plaintiff returned the signed forms, they were rejected as
15 untimely on February 3, 2003 (*Id.* at p. 3, lns. 1-2); and (4) Plaintiff did not appeal the decision,
16 but instead instituted this lawsuit on February 25, 2004 (*Id.* at p. 3, lns. 3-4). Based on these facts,
17 the Court held that the Ninth Circuit's decision in "*Ngo* compels a finding that Plaintiff has
18 exhausted the state's prison administrative grievance procedure." (*Id.* at p. 5, lns. 5-6.)

19 On November 14, 2005, the United States Supreme Court granted certiorari in *Ngo*.
20 W*oodford v. Ngo*, 126 S.Ct. 647, 74 U.S.L.W. 3301 (U.S. Nov. 14, 2005) (No. 05-416). On June
21 22, 2006, the Supreme Court issued a decision in *Ngo* reversing the Court of Appeals for the Ninth
22 Circuit. W*oodford v. Ngo*, 126 S.Ct. 2378, 2393 (2006). Specifically, the issue for consideration
23 by the Supreme Court was "whether a prisoner can satisfy the Prison Litigation Reform Act's
24 exhaustion requirement, 42 U.S.C. §1997e(a), by filing an untimely or otherwise procedurally
25 defective administrative grievance or appeal." *Id*. at 2382. The Supreme Court held "proper
26 exhaustion of administrative remedies is necessary." *Id.*
27 ///
28 ///

## III.

## PLAINTIFF'S GENERAL FACTUAL ALLEGATIONS

On December 1, 2002, Plaintiff was incarcerated at Richard J. Donovan Correctional Facility ("Donovan"). *See* Compl. at 4. Plaintiff claims that while in route to return kitchen tools, he slipped on a wet dining room floor and suffered a "sharp pain" in his lower back. *Id.* Plaintiff was taken by stretcher to the emergency room. *Id.* Plaintiff was given a pain killer, crutches, and a lower bunk assignment. *Id.* After the medical staff gave their diagnosis, the staff was informed that no lower bunks were available and Plaintiff was sent back to the prison facility in "extreme pain." *Id.* Plaintiff was told by an unidentified MTA (medical technical assistant) that he was "faking" and that "there was no pain." *Id.* Because of the pain, Plaintiff spent the night "sitting on the toilet." *Id.* In the morning, Plaintiff was informed on two separate occasions that he was going to be transferred to another correctional facility. *Id.* Plaintiff said he could not get up due to his injury. *Id.* Subsequently, Plaintiff was "forced" into a wheelchair by "the sergeant" and then "forced" into a motor cart by "the sergeant and the assisting officer." *Id.*

While in the holding cell, Plaintiff "fell to the floor" because of the pain. *Id.* at 5. Defendant Rain went to the holding cell and told Plaintiff to "shut up and stop faking." *Id.* Defendant Peterson brought a wheelchair to the holding cell in an attempt to bring Plaintiff to the infirmary, however, Plaintiff informed her he could not get into the wheelchair. *Id.* Subsequently, Defendant Williams and an unidentified MTA "came into the holding cell and began to taunt" Plaintiff. *Id.* Plaintiff was then told by Lieutenant Cobb that Plaintiff was to be put on the transfer bus "at all cost" [sic.]. *Id.* Plaintiff "was forced to CRAWL unto [sic] a bus for transport" (emphasis original). When Plaintiff arrived at Chuckwalla State Prison he was taken to the hospital and was informed he had suffered "nerve damage." *Id.* Plaintiff "was forced to stay in the hospital for approximately 3 months", is restricted to a wheelchair, and is classified as "permanant [sic.] mobility impaired." *Id.*

## IV.

## PLAINTIFF'S FACTS RELATED TO EXHAUSTION

The materials submitted in support of Plaintiff's Opposition to Defendants' first Motion to Dismiss [Doc. No. 15] document Plaintiff's attempts at exhaustion. Plaintiff submitted his original

1  602 Form on December 12, 2002, which documented an alleged incident at Donovan on December
2  1, 2002. (Plaintiff's Oppo., Ex A. at p. 2.) The 602 Form was not given a log number, but was
3  returned to Plaintiff on January 9, 2003, because he did not sign it. (Plaintiff's Oppo., Ex B.)
4  Plaintiff signed the Form 602 and returned it to Donovan. The Appeals Coordinator at Donovan
5  rejected the Form 602 as untimely on February 3, 2003. (Plaintiff's Oppo, Ex. A, at pp.1-2.)
6  Plaintiff also submitted a second 602 Form dated December 13, 2002, which concerned the alleged
7  December 1, 2002 incident at Donovan as well. (Plaintiff's Oppo, Ex. C.) Plaintiff's second 602
8  Form was similarly rejected as untimely. (Plaintiff's Oppo, Ex. C.)

## V.

## DISCUSSION

11  Defendants Peterson, Williams, and Cobb again move to dismiss Plaintiff's Complaint on
12  the ground that Plaintiff failed to properly exhaust his administrative remedies prior to filing suit.
13  The Supreme Court's recent decision in *Woodford v. Ngo* carefully discusses the Prison Litigation
14  Reform Act's exhaustion requirement in the context of an untimely or otherwise procedurally
15  defective administrative grievance, which is the issue presented by the instant action. Given the
16  Supreme Court's holding in *Ngo*, which requires that there be exhaustion, and that such exhaustion
17  be proper, it is recommended that the Court GRANT Defendants' Motion to Dismiss for failure to
18  exhaust administrative remedies with prejudice.

19  **A.    Failure to Exhaust Administrative Remedies**

20  Defendants Peterson, Williams, and Cobb seek dismissal under the "non-enumerated"
21  provisions of FED.R.CIV.P. 12(b) on the ground that Plaintiff failed to properly exhaust his
22  administrative remedies pursuant to 42 U.S.C. §1997e(a).

23  Before the Prison Litigation Reform Act ("PLRA") was enacted, prisoners challenging the
24  conditions of confinement under 42 U.S.C. §1983 were not generally required to exhaust
25  administrative remedies before filing suit in district court. *See Patsy v. Bd. of Regents*, 457 U.S.
26  496, 500-01 (1982); *Porter v. Nussle*, 122 S.Ct. 983, 987 (2002). The PLRA amended 42 U.S.C.
27  §1997e(a), however, to provide that "no action shall be brought with respect to prison conditions
28  under section 1983 if this title, or any federal law, by a prisoner confined in jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); *Porter*, 122 S.Ct. at 988; *Wyatt v. Terhune*, 280 F.3d 1238, 1244 (9th Cir. 2002).

The Supreme Court has called "protecting administrative agency authority and promoting judicial efficiency" the "twin purposes" of administrative exhaustion. *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992); *see also Porter*, 122 S.Ct. at 988 (noting that corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate and thereby obviate the need for litigation, help to filter out frivolous claims and provide the court with an administrative record that clarifies the contours of the controversy) (citing *Booth v. Churner*, 532 U.S. 731, 737 (2001).

In the Supreme Court's recent decision of *Woodford v. Ngo*, 126 S.Ct. 2378 (2006), the Court further defined the exhaustion requirement of the PLRA, stating: "The text of 42 U.S.C. §1997e(a) strongly suggests that the PLRA uses the term "exhausted" to mean what the term means in administrative law, where exhaustion means proper exhaustion." N*go*, 126 S.Ct. at 2387. Proper exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* at 2385. (emphasis in original). Specifically, "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 2386. The question to ask is, "not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 2387. (citation omitted; emphasis in original).

**1.   Administrative Appeals System**

The administrative appeals system for inmates in the California prison system is set forth in Title 15 of the California Code of Regulations. "Any inmate or parolee under the [California Department of Corrections'] jurisdiction may appeal any departmental decision, action, condition, or policy perceived by those individuals as adversely affecting their welfare." CAL. CODE REGS. tit. 15 §3084.1(a). In order to exhaust administrative remedies, a prisoner must first attempt to informally resolve the problem with the staff member involved in the action or decision being appealed." *Id.* §3084.5(a). If unsuccessful, the prisoner must then submit a formal appeal on an

inmate appeal form (a "602") to the institution's Appeals Coordinator or Appeals Office. *Id.*, §3084.5(b). If the prisoner is again unsuccessful, he or she must submit a formal appeal for second level review, *Id.*, §3084.5(c), which is conducted by the institution head or designee. *Id.* §3084.5(e)(1). The third or "Director's Level" of review "shall be final and exhausts all administrative remedies available in the Department [of Corrections]." *See* Cal. Dep't. of Corrections Operations Manual, §54100.11, "Levels of Review;" *see also Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997); *Irvin v. Zamora*, 161 F. Supp. 2d 1125, 1129 (S.D. Cal. 2001); *see also Ngo*, 126 S.Ct. at 2383.[3]

### 2. Application to Plaintiff's Case

Defendants Peterson, Williams, and Cobb seek dismissal on the ground that Plaintiff failed to properly exhaust administrative remedies as required by 42 U.S.C. §1997e(a). Use of the 602 Inmate/Parolee Appeal Form is required to initiate the administrative grievance process. See CAL. CODE REGS., tit. 15 §3084.2. The 602 Form limits the prisoner to one paragraph, plus one extra sheet, in which they are directed to frame their "problem." See id. §3084.2(a)(1). Moreover, the 602's format suggests that its purpose is to simply provide a mechanism so that the prisoner can describe the facts giving rise to his grievance from his own perspective; it does not require the prisoner to name "defendants" with particularity, as if he were pleading his case in federal court.

The exhibits submitted with Plaintiff's Opposition to Defendants' first Motion to Dismiss [Doc. No. 15.] demonstrate that plaintiff submitted a 602 Form on December 12, 2002, which describes the December 1, 2002 incident at Donovan. (Plaintiff's Oppo., Ex. A at 2.) The 602 appeal was not given a log number and was instead returned to Plaintiff on January 3, 2003 because Plaintiff failed to sign the 602 as required in "Section B" of the appeal form. (Plaintiff's Oppo, Ex. B.) By this time, however, Plaintiff had been transferred to Chuckawalla Valley State Prison. (Plaintiff's Oppo., at 2.) Plaintiff, signed the December 12, 2002 and returned it to Donovan. The appeal was then rejected as untimely on February 3, 2003 by Appeals Coordinator D. Scudder at Donovan. (Plaintiff's Oppo., Ex. A at pp. 1-2.) Plaintiff's second 602 appeal dated

---

[3] In requiring proper exhaustion, the Supreme Court in *Ngo* took into account "the informality and relative simplicity of prison grievance systems like California's, as well as the fact that prisoners who litigate in federal court generally proceed pro se and are forced to comply with numerous unforgiving deadlines and other procedural requirements." *Ngo*, 126 S.Ct. 2378, 2393 (2006).

1  December 13, 2002, which stemmed from the December 1, 2002 incident, was similarly rejected
2  as untimely on February 3, 2003.  (Plaintiff's Oppo., Ex. C.)
3        There is no evidence that Plaintiff further appealed or received a Second Level or
4  Director's Level Review after receiving notification that his 602s were rejected as untimely.  Such
5  a process is required by 42 U.S.C. §1997e(a) and described in Title 15 of the California Code of
6  Regulations.  *See also Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997).  There is
7  likewise no evidence that Plaintiff sought relief through any collateral 602 appeals.  It appears that
8  Plaintiff's only action upon receiving the untimeliness rejection to his 602s was the filing of the
9  instant action on February 25, 2004, over a year later.  Consequently, Plaintiff's attempts at
10 exhaustion were improper.
11       As the Court in *Ngo* explained:
12       "Requiring proper exhaustion . . . gives prisoners an effective incentive to make full use of
13       the prison grievance process and accordingly provides prisons with a fair opportunity to
14       correct their own errors.  This is particularly important in relation to state corrections
15       systems because it is 'difficult to imagine an activity in which a State has a stronger
16       interest, or one that is more intricately bound up with state laws, regulations, and
17       procedures, than the administration of its prisons."
18 *Ngo*, 126 S. Ct. at 2388 (quoting *Preiser v. Rodriguez*, 411 U.S. 475 (1973).)
19       Moreover, the Supreme Court observed that:
20       "The benefits of exhaustion can be realized only if the prison grievance system is given a
21       fair opportunity to consider the grievance.  The prison grievance system will not have such
22       an opportunity unless the grievant complies with the system's critical procedural rules.  A
23       prisoner who does not want to participate in the prison grievance system will have little
24       incentive to comply with the system's procedural rules unless noncompliance carries a
25       sanction . . . .  For example, a prisoner wishing to bypass available administrative remedies
26       could simply file a late grievance without providing any reason for failing to file on time.
27       If the prison then rejects the grievance as untimely, the prisoner could proceed directly to
28 ///

federal court . . . . We are confident that the PLRA did not create such a toothless scheme." *Ngo*, 126 S. Ct. at 2388.

Plaintiff did not properly exhaust administrative remedies as required by *Ngo*. After Plaintiff received notification that his 602s were rejected as untimely, he did not appeal those decisions directly or collaterally through Director's Level Review or additional 602 Forms. Therefore, it is recommended that Plaintiff's claims against Defendants Peterson, Williams, and Cobb be dismissed with prejudice for failure to exhaust in accordance with Section 1997e(a) of the PLRA.

## VI.
## CONCLUSION AND RECOMMENDATION

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order **GRANTING** with prejudice Defendants' Motion to Dismiss as to Defendants Peterson, Williams, and Cobb for failure to exhaust administrative remedies pursuant to 42 U.S.C. §1997e(a).

This Report and Recommendation will be submitted to United States District Judge M. James Lorenz pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the court and serve a copy on all parties **by January 24, 2007.** The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed **by February 2, 2007.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: January 3, 2007

Hon. William McCurine, Jr.
U.S. Magistrate Judge
United States District Court

Copy to:

HONORABLE M. JAMES LORENZ
PRISONER *PRO SE*
ALL PARTIES AND COUNSEL OF RECORD