# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| ROY T. MARSHALL, | Case No. 04cv0403 L (WMc) |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| SGT. RAIN; MS. PETERSON, RN; MR. WILLIAMS, MTA; DONOVAN CORRECTIONAL FACILITY MEDICAL STAFF, et al.; LIEUTENANT COBB; John and Jane Does 1-10, | |
| Defendants. | |

**I.**

**INTRODUCTION**

Roy Marshall ("Plaintiff"), a California state prisoner at California Men's Colony State Prison, is proceeding *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 alleging his Eighth Amendment rights were violated by prison officials at Richard J. Donovan Correctional Facility ("Donovan") in San Diego, California.

///
///
///
///

## II.

## PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on February 25, 2004, alleging that prison officials at Donovan ignored his need for medical treatment after he sustained injuries resulting from a fall. (Doc. No. 1, Compl. at 3-4.) On October 5, 2004, Defendants filed a motion to dismiss for failure to exhaust administrative remedies arguing there was no evidence that Plaintiff had filed any appeals related to medical neglect at Donovan. (Doc. No. 12, Defs. Mtn. To Dismiss at 3.)

On January 31, 2005, Magistrate Judge William McCurine, Jr. issued a Report and Recommendation recommending that Defendants' Motion to Dismiss be granted without prejudice for failure to exhaust administrative remedies. (Doc. No. 18, p. 10, lns. 17-18.) Judge McCurine reported that, although Plaintiff had submitted an initial Form 602 (Doc. No. 18, at p. 6), a dismissal was warranted because Plaintiff's Form 602 was rejected as untimely and Plaintiff failed to further appeal that rejection, nor did Plaintiff seek relief through any collateral 602 appeals. (Doc. No. 18, at p. 7.)

On March 24, 2005, the Ninth Circuit decided *Woodford v. Ngo,* 403 F.3d 620 (9th Cir. 2005). In *Ngo*, a prisoner's administrative appeal was rejected as untimely because he had not filed his appeal within fifteen days of the alleged incident. *Ngo*, 403 F.3d at 622. The prisoner's second grievance was also rejected as untimely. *Id.* Reasoning that the prisoner had no further level of appeal available in the prison's internal grievance process, the Ninth Circuit found that the prisoner *had* exhausted all administrative remedies available to him pursuant to the Prison Litigation Reform Act ("PLRA"), and reversed the district court's dismissal of his complaint. *Id.* at 630.

On June 24, 2005, Judge Lorenz issued an Order denying Defendants' Motion to Dismiss. (Doc. No. 24 at p. 9, lns. 8-9.) In ruling on Defendants' motion, the Court found that: (1) Plaintiff filed administrative appeals concerning his medical treatment and the decision to transport him (*Id.* at p. 2, lns. 27-28); (2) the appeals were returned to Plaintiff on January 9, 2003, because he had not signed them (*Id.* at pp. 2-3); (3) after Plaintiff returned the signed forms, they were rejected as untimely on February 3, 2003 (*Id.* at p. 3, lns. 1-2); and (4) Plaintiff did not appeal the decision,

1 but instead instituted this lawsuit on February 25, 2004.  (*Id.* at p. 3, lns. 3-4)  Based on these facts,
2 the Court held that the Ninth Circuit's decision in "*Ngo* compels a finding that Plaintiff has
3 exhausted the state's prison administrative grievance procedure."  (*Id.* at p. 5, lns. 5-6.)  On June
4 27, 2005, United States District Judge M. James Lorenz dismissed Defendants Rain and Donovan
5 Correctional Facility Medical Staff without prejudice for failure to serve.  (Doc. No. 24, pp. 8-9.)
6 Judge Lorenz further ordered the remaining Defendants Peterson, Williams and Cobb to answer.
7 *Id.* at. p. 9.  Defendants Peterson, Williams and Cobb answered Plaintiff's complaint on July 11,
8 2005. (Doc. No. 25.)

9 On November 14, 2005, the United States Supreme Court granted certiorari in W*oodford v.*
10 *Ngo*, 126 S.Ct. 647, 74 U.S.L.W. 3301 (U.S. Nov. 14, 2005) (No. 05-416).  On June 22, 2006, the
11 Supreme Court issued a decision in *Ngo* reversing the Court of Appeals for the Ninth Circuit.
12 W*oodford v. Ngo*, 126 S.Ct. 2378, 2393 (2006).  Specifically, the issue for consideration by the
13 Supreme Court was "whether a prisoner can satisfy the Prison Litigation Reform Act's exhaustion
14 requirement, 42 U.S.C. §1997e(a), by filing an untimely or otherwise procedurally defective
15 administrative grievance or appeal."  *Id.* at  2382.  The Supreme Court ultimately held in *Ngo* that
16 "proper exhaustion of administrative remedies is necessary."  *Id.*  On September 27, 2006,
17 Defendants brought a second motion to dismiss for failure to exhaust administrative remedies.
18 (Doc. No. 52.)  On January 3, 2007, Magistrate Judge McCurine issued a Report and
19 Recommendation recommending that Defendants' Motion to Dismiss be granted for failure to
20 exhaust administrative remedies.  (Doc. No. 60.)    United States District Judge M. James Lorenz
21 denied Defendants' Motion to Dismiss on procedural grounds due to Plaintiff's inability to file an
22 opposition because of problems he experienced receiving legal mail.  (Doc. No. 71.)  On
23 September 28, 2007, Defendants Peterson, Williams and Cobb filed a motion for summary
24 judgment for failure to exhaust administrative remedies.  (Doc. No. 97.)  On November 19, 2007,
25 Plaintiff filed an opposition to Defendants' motion.  (Doc. No. 107.)  On January 2, 2008,
26 Defendants filed their reply in support of the motion for summary judgment.  (Doc. No. 109.)
27 ///
28 ///

## III.

## FACTUAL BACKGROUND

**A.     General Factual Allegations**

On December 1, 2002, Plaintiff was incarcerated at Richard J. Donovan Correctional Facility ("Donovan"). *See* Compl. at 5. Plaintiff claims that while in route to return kitchen tools, he slipped on a wet dining room floor and suffered a "sharp pain" in his lower back. *Id.* Plaintiff was taken by stretcher to the emergency room. *Id.* Plaintiff was given a pain killer, crutches, and a lower bunk assignment. *Id.* After the medical staff gave their diagnosis, the staff was informed that no lower bunks were available and Plaintiff was sent back to the prison facility in "extreme pain." *Id.* Plaintiff was told by an unidentified MTA (medical technical assistant) that he was "faking" and that "there was no pain." *Id.* Because of the pain, Plaintiff spent the night "sitting on the toilet." *Id.*

On or about December 3, 2002, Plaintiff was informed that he was going to be transferred to another correctional facility. *Id.* Plaintiff said he could not get up due to his injury. *Id.* Subsequently, Plaintiff was "forced" into a wheelchair by "the sergeant" and then "forced" into a motor cart by "the sergeant and the assisting officer." *Id.* Because Plaintiff was not allowed to bring crutches onto the transport bus, he was taken off the transport list for that day. *Id.* at 6.

Plaintiff was thereafter housed in a holding cell where he "fell to the floor" in pain. *Id.* at 6. Defendant Rain went to the holding cell and told Plaintiff to "shut up and stop faking." *Id.* Defendant Peterson brought a wheelchair to the holding cell in an attempt to bring Plaintiff to the infirmary, however, Plaintiff informed her he could not get into the wheelchair. *Id.* Subsequently, Defendant Williams and an unidentified MTA "came into the holding cell and began to taunt" Plaintiff. *Id.* Nevertheless, on or about December 5, 2002, Plaintiff was taken to the Satellite Clinic and given medication as well as an appointment for an MRI. (*Id.* at 6, Exhs. A and B to Defs. MSJ.) On December 11, 2002, Plaintiff was told a back brace had been ordered for him to use until an MRI was conducted. (Ex. B to Defs. MSJ.)

On or about December 17, 2002, Plaintiff was transferred from Donovan. (Ex. D to Defs. MSJ; Plaintiff's Opp'n at 2:14-16.) On the day of transfer, Plaintiff was told by Lieutenant Cobb

1  that he was to be put on the transfer bus "at all cost" [sic]. *See* Compl. at 6. Plaintiff "was forced
2  to CRAWL unto [sic] a bus for transport." *Id.* (emphasis in original). When Plaintiff arrived at
3  Chuckwalla State Prison he was taken to the hospital and was informed he had suffered "nerve
4  damage." *Id.* Plaintiff "was forced to stay in the hospital for approximately 3 months," was
5  restricted to a wheelchair, and is classified as "permanant [sic] mobility impaired." *Id.*

6  **B.     Factual Allegations Related to Exhaustion**

7       Plaintiff submitted a 602 Form on December 12, 2002, which documented his slip-and-fall
8  incident at Donovan on December 1, 2002. (Ex A. to Defs. MSJ; Plaintiff's Decl., paras.1-2.) The
9  602 Form was not given a log number, but was returned to Plaintiff on January 9, 2003 at
10 Chuckawalla because he did not sign it. (Ex. C to Defs. MSJ.) Plaintiff signed the returned 602
11 Form and sent it back to Donovan. (Plaintiff's Decl., para. 7.) The Appeals Coordinator at
12 Donovan rejected the 602 Form as untimely on February 3, 2003. (Ex A. to Defs. MSJ.)

13      Plaintiff also submitted a second 602 Form to Donovan staff dated December 13, 2002,
14 which documented his objection to being transported from Donovan while injured and awaiting
15 treatment. (Ex. B to Defs. MSJ; Plaintiff's Decl., para. 8.) Although Plaintiff's second 602 form
16 was signed, it was also erroneously rejected as untimely on February 3, 2003. (*Id.*)

17      Plaintiff did not object to or appeal the rejection of his December 12, 2002 and December
18 13, 2002, 602 Forms. (Plaintiff's Decl., para. 7.)

19                                         **IV.**
20                    **STANDARD ON MOTION FOR SUMMARY JUDGMENT**
21 **A.     Standard of Review**

22      Summary judgment is appropriate if there is no genuine issue as to any material fact, and
23 the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c). The moving
24 party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H.*
25 *Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings,
26 depositions, affidavits, or other evidence which the moving party "believes demonstrates the
27 absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).
28 "A material issue of fact is one that affects the outcome of the litigation and requires a trial to

1  resolve the parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306
2  (9th Cir. 1982).

3      The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there
4  is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To successfully rebut a properly supported
5  motion for summary judgment, the nonmoving party "must point to some facts in the record that
6  demonstrate a genuine issue of material fact and, with all reasonable inferences made in the
7  plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson*
8  *School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing FED.R.CIV.P. 56; *Celotex*, 477 U.S.
9  at 323).

## V.

## DISCUSSION - Failure to Exhaust Administrative Remedies

12      Defendants Peterson, Williams, and Cobb seek summary adjudication on the ground that
13  Plaintiff failed to properly exhaust his administrative remedies before filing suit. Before the
14  Prison Litigation Reform Act ("PLRA") was enacted, prisoners challenging the conditions of
15  confinement under 42 U.S.C. §1983 were not generally required to exhaust administrative
16  remedies before filing suit in district court. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 500-01
17  (1982); *Porter v. Nussle*, 122 S.Ct. 983, 987 (2002). The PLRA amended 42 U.S.C. §1997e(a),
18  however, to provide that "no action shall be brought with respect to prison conditions under
19  section 1983 of this title, or any federal law, by a prisoner confined in jail, prison, or other
20  correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.
21  §1997e(a); *Porter*, 122 S.Ct. at 988; *Wyatt v. Terhune*, 280 F.3d 1238, 1244 (9th Cir. 2002). Under
22  the PLRA, "exhaustion is no longer left to the discretion of the district court, but is mandatory.
23  *Woodford v. Ngo*, 126 S.Ct. 2378, 2382 (2006).

24      The Supreme Court has called "protecting administrative agency authority and promoting
25  judicial efficiency" the "twin purposes" of administrative exhaustion. *McCarthy v. Madigan*, 503
26  U.S. 140, 145 (1992); *see also Porter*, 122 S.Ct. at 988 (noting that corrective action taken in
27  response to an inmate's grievance might improve prison administration and satisfy the inmate and
28  thereby obviate the need for litigation, help to filter out frivolous claims and provide the court with

an administrative record that clarifies the contours of the controversy) (citing *Booth v. Churner*, 532 U.S. 731, 737 (2001).

In *Woodford v. Ngo*, 126 S.Ct. 2378 (2006), the Supreme Court further defined the exhaustion requirement of the PLRA, stating: "The text of 42 U.S.C. §1997e(a) strongly suggests that the PLRA uses the term "exhausted" to mean what the term means in administrative law, where exhaustion means proper exhaustion." N*go*, 126 S.Ct. at 2387. Proper exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* at 2385. (emphasis in original). Specifically, "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 2386. The question to ask is, "not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 2387. (citation omitted; emphasis in original).

**A. The CDC Form 602 Appeal Process**

The administrative appeals system for inmates in the California prison system is set forth in Title 15 of the California Code of Regulations. "Any inmate or parolee under the [California Department of Corrections'] jurisdiction may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse affect upon their welfare." CAL. CODE REGS. tit. 15 §3084.1(a). In order to exhaust administrative remedies, a prisoner must first attempt to informally resolve the problem (within 15 working days of the event complained of) with the staff member involved in the action or decision being appealed. *Id*. §§ 3084.2(b), 3084.5(a). If unsuccessful, the prisoner must then submit a formal appeal on an inmate appeal form (a "602") to the institution's Appeals Coordinator or Appeals Office within 15 days of receiving the informal response. *Id*., §3084.5(b). If the prisoner is again unsuccessful, he or she must submit a formal appeal for second level review within 15 days of receiving the first level decision, which is conducted by the warden or regional parole administrator or his designee. *Id*. §3084.5(c), (e)(1). Third level review, a request for which must be filed within 15 days of receiving the second level decision, "shall be final and exhausts all administrative remedies available in the Department [of Corrections]." *See* Cal. Dep't. of Corrections Operations Manual, §54100.11; *see also* 15 C.C.R.

1  §3084.5(d), (e)(2); *Nichols v. Logan*, 355 F. Supp. 2d 1155, 1161 (S.D. Cal. 2004); *see also Ngo*, 126 S.Ct. at 2383.[1]

### B. Plaintiff Has Not Exhausted Administrative Remedies As To Lt. Cobb

Defendants argue that Plaintiff has not exhausted his available administrative remedies with respect to Lt. Cobb because Lt. Cobb's conduct was not raised by Plaintiff in the 602 Forms submitted on December 12, 2002 and December 13, 2002. (Defs. MSJ at 14:3-16.) Defendants contend that the first mention of Lt. Cobb's conduct occurs in Plaintiff's complaint. (Defs. MSJ at 13:2-3) Defendants further argue that because the actions of Lt. Cobb about which Plaintiff complains occurred on December 17, 2002, it is a temporal impossibility for Plaintiff to have placed Lt. Cobb on notice of his actions in a 602 Form dated December 12 and December 13 because the conduct had not yet happened. (Defs. MSJ at 12:11-14.)

Plaintiff contends, however, that Lt. Cobb's actions on December 17, 2002 constituted *a continuing violation* of his Constitutional rights such that Lt. Cobb was sufficiently apprised of his conduct by the submission of Plaintiff's two 602 Forms on December 12, 2002 and December 13, 2002. (Plaintiff's Opp'n at 2:4-13, 8:12-9:11.)

In *Ornelas v. Giurbino*, 358 F. Supp. 2d 955 (S.D. Cal. 2005), plaintiff complained about the alleged sexual harassment of a certain prison guard against him as well as the alleged retaliatory actions of other prison staff, which occurred after the initial incident of misconduct. Although the plaintiff filed a 602 Form on April 16, 2002, detailing the harassment of the sole guard who made an offensive overture to him, he did not file a subsequent 602 form to address the alleged retaliatory conduct initiated by other guards that occurred after April 16, 2002. Finding that Plaintiff had not exhausted administrative remedies against the other defendants, the Court explained:

> "All complaints against the unnamed Defendants involved alleged action occurring after the Plaintiff's 602 filing. This made it temporally impossible for these Defendants to become aware of any grievance against them. Furthermore, nowhere did . . . Plaintiff submit any documentation or evidence that this claim had been considered by CDC

---

[1] In requiring proper exhaustion, the Supreme Court in *Ngo* took into account "the informality and relative simplicity of prison grievance systems like California's, as well as the fact that prisoners who litigate in federal court generally proceed pro se and are forced to comply with numerous unforgiving deadlines and other procedural requirements." *Ngo*, 126 S.Ct. 2378, 2393 (2006).

> officials at any level of administrative review as to the Defendants in question. Therefore, Plaintiff has failed to exhaust all administrative remedies."

*Id.* at 961.

Like the plaintiff in *Ornelas*, Plaintiff here has alleged misconduct by Lt. Cobb that occurred on December 17, 2002 - five days after the filing of Plaintiff's December 12, 2002 and December 13, 2002 602 Forms. Lt. Cobb could not have been on placed on notice of his conduct on December 17, 2002, nor given a chance to respond to the allegations made against him based on the December 12, 2002 and December 13, 2002 602 Forms, which only described conduct that occurred on December 1, 2, 3, 5, and 11 of 2002 and therefore, pre-dated the alleged incident in which Lt. Cobb was involved. Because Lt. Cobb was not involved in the events that transpired on December 1, 2, 3, 5, and 11 of 2002, there is no evidence that his alleged behavior on December 17, 2002 was related to the earlier events, or was in retaliation for the documentation of those earlier events in Plaintiff's December 12 and 13, 2002 602 Forms. Moreover, Plaintiff did not appeal the rejection of his 602 Forms from December 12 and 13, 2002, so there is no documentation to suggest Plaintiff somehow supplemented his original grievances to add allegations against Lt. Cobb. Accordingly, there is no evidence to rebut Defendants' showing as to lack of exhaustion, nor is there evidence to establish that prison officials at any level of review considered Plaintiff's allegation as to Lt. Cobb. For the reasons discussed above, it is therefore recommended that Defendants' motion for summary judgment for failure to exhaust administrative remedies against Lt. Cobb be **GRANTED** and Plaintiff's claim against Defendant Cobb be dismissed with prejudice.

**C.    Plaintiff Has Not Exhausted His Administrative Remedies As To Defendants Peterson and Williams Because He Failed To Further Appeal His Rejected 602 Forms**

Plaintiff submitted a 602 Form on December 12, 2002, which describes the December 1, 2002 incident at Donovan. (Ex. A to Defs. MSJ.) The 602 Form was not given a log number and was instead returned to Plaintiff on January 3, 2003 because Plaintiff failed to sign the 602 as required in "Section B" of the form. (Ex. C to Defs. MSJ). Plaintiff's second 602 Form, which was submitted on December 13, 2002, was also returned in error to Plaintiff on January 3, 2003. (Ex. D. To Defs. MSJ.) At the bottom of the Medical Appeal Notice/Screening Form dated

1 January 9, 2003, and attached to Plaintiff's returned 602 forms, is language advising inmates that
2 "[t]his screening action may not be appealed unless you allege that the above-reason is not
3 accurate. Please return this form to the appeals office with the necessary information as indicated
4 above for processing your CDC 602." (Ex. C to MSJ.)

5 By the time Plaintiff received the January 3, 2003 Screening Form, he had been transferred
6 to Chuckawalla Valley State Prison. (Ex. D to Defs. MSJ.) Plaintiff signed the rejected 602
7 Forms and returned them to Donovan. (Exhs. B and D to Defs. MSJ.) The appeals were then
8 rejected as untimely on February 3, 2003 by Appeals Coordinator D. Scudder at Donovan. *Id.*
9 Language printed at the bottom of Plaintiff's Inmate Appeals Screening Form dated February 3,
10 2003, which rejected Plaintiff's 602 Forms as untimely, advised "t]his screening decision may not
11 be appealed unless you allege the above-reason is inaccurate. In such a case, please return this
12 form to the Appeals Office with the necessary information. You have 15 days to comply." (Ex. D
13 to MSJ.)

14 In his Declaration in opposition to Defendants' motion for summary judgment, Plaintiff
15 admits that he did not appeal the rejection of his December 12, 2002 and December 13, 2002 602
16 Forms. (Plaintiff's Decl., para 9.) Consequently, he never received review of his grievance by
17 prison officials at the formal levels of review. Plaintiff's only action upon receiving the
18 untimeliness rejection to his 602s was the filing of the instant action on February 25, 2004, over a
19 year later. [Doc. No.1 - Complaint.] Plaintiff attributes the failure to further appeal the rejection of
20 his 602 Forms in part to his uncertainty as to how to proceed and his belief that no further
21 administrative remedies were available. (Plaintiff's Decl., para 9.) Plaintiff also contends prison
22 officials did not respond to his grievance in a timely manner thereby rendering the administrative
23 process unavailable. (Plaintiff's Opp'n at 5:17-20.) Finally, Plaintiff argues because prison
24 officials erroneously deemed his 602 Forms as untimely and rejected them on that incorrect basis,
25 he was prevented from pursuing additional steps in the prison's administrative remedy process.
26 (Plaintiff's Opp'n at 7:8-20.)

27 In response to Plaintiffs' contentions and in response to specific issues raised by the
28 District Court in its March 14, 2007 Order, Defendants argue that unlike the Plaintiff in *Ngo,* who
filed an untimely Form 602, the Plaintiff here filed a timely, but procedurally defective, claim.

- 10 -                                                                                       04cv0403 L (WMc)

Defendants contend that Plaintiff was not only given the opportunity to cure his incomplete 602 Form, which he did, but Plaintiff was also instructed, through clear language on the prison screening form, on how to appeal the rejection of his 602 Forms for reasons he felt were inaccurate. (Defs. MSJ at 18:13-21.) Nevertheless, Plaintiff made no attempt to appeal the prison's untimeliness determination. (Defs. MSJ at 18:22-19:7.) Defendants also underscore the availability of the inmate grievance procedure to Plaintiff despite the fact that he was transferred and hospitalized. Defendants note that, although Plaintiff was transferred to Chuckawalla, he received correspondence from Donovan and in turn corresponded with Donovan as evidenced by: (1) the January 9, 2003 screening form, which requested Plaintiff sign his 602 Forms and return them to Donovan and (2) the February 3, 2003 screening form, which rejected his 602 Forms as untimely. (Defs, MSJ at 19:10-20:7; Exhs. C and D to Defs. MSJ.) Finally, Defendants argue that Plaintiff deliberately bypassed the administrative process put in place by the prison when Plaintiff did not take the clearly delineated steps necessary to appeal any inaccuracies he perceived prison officials to have made when they rejected his 602 Forms as untimely. (Defs. MSJ at 20:10-23.)

The Court acknowledges the requirement that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..." *Ngo*, 126 S. Ct. at 2386. This requirement, however, must be viewed in light of authority for the proposition that a prison's failure to respond to or return an inmate grievance may result in a finding that exhaustion occurred. *See e.g. Boyd v. Corrections Corp. Of America,* 380 F.3d 989, 996 (6th Cir. 2004) (administrative remedies exhausted where prison failed to respond to grievance within policy time limits); *Jernigan v. Stuchell* 304 F.3d 1030, 1032 (10th Cir. 2002) (failing to respond in a timely manner to inmate grievance renders administrative remedy unavailable); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (where prison officials fail to respond, administrative remedy is unavailable and thereby exhausted); *Brown v. Croak*, 312 F. 3d 109, 111 (3d. Cir. 2002) (administrative remedy unavailable where prisoner was instructed to wait until investigation was complete before filing grievance, but was never informed that investigation had ended.); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy prison officials prevent a prisoner from utilizing is not an available remedy.)

Although the prison officials at Donovan did not provide an informal level response to Plaintiff's December 12, 2002 and December 13, 2002 602 Forms within the 10-working-day time limit, they did respond to Plaintiff, who had been transferred to Chuckawalla Valley State Prison, on January 9, 2003 and gave him an opportunity to correct his incomplete 602 Form by filling in the signature blank. *See* Ex. C to Defs' MSJ; CAL. CODE REGS. tit. 15 §3084.3 (c)(5) (explaining that an appeal may be rejected if it is "incomplete."); CAL. CODE REGS. tit. 15 §3084.6 (b)(1) (stating that "informal level responses shall be completed within 10 working days."). From Chuckawalla Valley State Prison, Plaintiff signed and returned the 602 Forms to Donovan, which were rejected and returned to Plaintiff less than a month later on February 3, 2003. (Ex. D to Defs' MSJ.) As the Court noted above in its description of the screening forms, language printed at the bottom of the February 3, 2003 form indicated "t]his screening decision may not be appealed unless you allege the above-reason is inaccurate. In such a case, please return this form to the Appeals Office with the necessary information. You have 15 days to comply." (Ex. D to MSJ.)

Based on the undisputed facts that prison officials: (1) responded to Plaintiff's incomplete 602 Forms as well as the corrected 602 Forms, (2) gave Plaintiff an opportunity and a time frame in which to appeal the rejection of those forms and (3) Plaintiff made no attempt to appeal the rejection, this Court is not persuaded by the argument that prison officials made the grievance system unavailable to him. The facts of Plaintiff's case are unlike other cases where prison officials altogether failed to respond to a prisoner grievance, or unreasonably and excessively delayed their response for months, leaving the prisoner unaware of how or when to proceed. *See e.g. Boyd v. Corrections Corp. Of America,* 380 F.3d 989, 996 (6th Cir. 2004)*; Lewis v. Washington*, 300 F.3d 829, 833. Here, Plaintiff received notification that his 602s were rejected as untimely, and regardless of whether that determination by the prison was correct, Plaintiff was given instructions and a time frame in which to object to the decision to the extent it was inaccurate. (Exs. A, B and D to Defs. MSJ.) Plaintiff made no effort to appeal those decisions, even though it is clear from his receipt of screening forms from Donovan that he was afforded the opportunity to correspond with Donovan from Chuckawalla. (Plaintiff's Decl., para. 7.) It is, therefore, recommended that Defendants' motion for summary judgment for failure to exhaust

1 administrative remedies against Defendants Peterson, Williams, and Cobb be **GRANTED** and
2 Plaintiff's claims against Defendants be dismissed with prejudice for failure to exhaust his claim
3 through the Director's Level of review in accordance with Section 1997e(a) of the PLRA.

4 **D.  PLAINTIFF'S PROCEDURAL OBJECTIONS TO DEFENDANTS' FOR SUMMARY**
5 **JUDGMENT MOTION ARE OVERRULED.**

6 Plaintiff objects to the filing of Defendants' motion for summary judgment without
7 concurrent separate statement of undisputed material fact. (Plaintiff's Opp'n, 1:15-20.)  It is
8 recommended that Plaintiff's objection be **OVERRULED.**  Unlike other districts, this district
9 does not require the filing of a separate statement of material fact in support of a motion for
10 summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Local Civil Rule 7.1
11 (f)(1), Fed. R. Civ. P. 56(e), *See also Lewis Management Co., Inc. v. Corel Corp.*, 1995 WL
12 724835, *8, No. 94-1903 (S.D. Cal. June 28, 1995).

13 Plaintiff also contends the exhibits in support of Defendants' Motion for Summary
14 Judgment lack authentication. (Plaintiff's Opp'n, 1:21-25.)  Plaintiff, however, authenticated
15 Exhibit A (December 12, 2002 602 Form), Exhibit B (December 13, 2002 602 Form), Exhibit C
16 (January 9, 2003 Screening Form), and Exhibit D (February 3, 2003 Screening Form) to
17 Defendants' motion for summary judgment in his November 27, 2004 declaration, filed under
18 penalty of perjury, in opposition to Defendants' first motion to dismiss.  *See* Plaintiff's Decl. in
19 support of Opposition - Doc. No. 15, p. 6, paras. 3 and 5.  Therefore, it is recommended that
20 Plaintiff's objection be **OVERRULED.**

21 **VI.**
22 **CONCLUSION AND RECOMMENDATION**

23 For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an
24 Order **GRANTING** with prejudice Defendants' Motion for Summary Judgment as to Defendants
25 Peterson, Williams, and Cobb for failure to exhaust administrative remedies pursuant to 42 U.S.C.
26 §1997e(a).

27 This Report and Recommendation will be submitted to United States District Judge M.
28 James Lorenz pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

objections with the court and serve a copy on all parties **by March 28, 2008.** The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed **by April 16, 2008.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: February 28, 2008

_WMcCurineJr._
Hon. William McCurine, Jr.
U.S. Magistrate Judge, U.S. District Court

Copy to:

HONORABLE M. JAMES LORENZ
PRISONER *PRO SE*
ALL PARTIES AND COUNSEL OF RECORD